IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| TIMOTHY HARLOW, individually and As Representative of his minor children MARILYN HARLOW and PRISCILLA HARLOW | § § | |
| Vs. | § | CIVIL ACTION NO. 2:05-CV-00207 |
| DAIMLERCHRYSLER CORPORATION | § | |

**MEMORANDUM OPINION AND ORDER**

Timothy Harlow, (hereinafter "Harlow") individually and as representative of his minor

children, Marilyn and Priscilla Harlow, sued DaimlerChrysler Corp. (hereinafter

"DaimlerChrysler") for injuries suffered by Marilyn allegedly caused by the deployment of an air

bag during an automobile accident in Tucson, Arizona.[1]  DaimlerChrysler, pursuant to Fed. R.

Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), moves this Court to dismiss or transfer the suit for

improper venue. After reviewing the parties' briefs and the relevant law, this Court DENIES

DaimlerChrysler's motion.

I.    **Facts**

On August 28, 2003, Harlow and his daughters were traveling in their 1996 Plymouth

---

[1]Harlow alleges four bases for DailmerChrylser's potential liability:  products liability, negligence, breach of warranty, and negligent infliction of emotional distress.

Voyager[2] from Tucson, Arizona, to their home in Denison, Texas, when they were involved in an automobile accident in Tucson.[3]  During the accident, the passenger side air bag deployed and struck nine year old Marilyn, allegedly causing her to suffer severe brain damage.  Marilyn received treatment in Tucson and Phoenix for approximately four months after the accident.  In December, 2003, Marilyn began treatment and rehabilitation at the Truman W. Smith Children's Center in Longview, Texas, which continued until March, 2005.  Marilyn is now in home care at her new place of residence in Gladewater, Texas.

**II.    Discussion**

Fed. R. Civ. P. 12(b)(3)[4] and 28 U.S.C. § 1404(a)[5] authorize a court, upon suitable

---

[2]Plymouth was a brand of Chrysler Corporation.  In 1998, Chrysler Corporation merged with DaimlerBenz AG to form DaimlerChrysler Corporation.  DaimlerChrysler is a Delaware Corporation with its principal place of business in Michigan.  DaimlerChrysler, http://www.daimlerchrysler.com/dccom (last visited December 8, 2005).

[3]The Harlows purchased the Plymouth Voyager from Hoyte Dodge in Sherman, Texas.  Sherman is in the Eastern District of Texas.

[4]Fed. R. Civ. P. 12(b)(3) states:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

(3) improper venue

[5]28 U.S.C. § 1404(a) states:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

showing, to dismiss an action where venue in that court is improper.  *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).  Once a defendant raises a 12(b)(3) motion, the burden of sustaining venue lies with the plaintiff.  *Id.*  If there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts, deemed to be true, that establish venue.  *Id.*  Courts will accept uncontroverted facts in a plaintiff's pleadings as true, and will resolve any conflicts in the plaintiff's favor.  *Id.*

Venue in this case is based upon the general federal venue statute, 28 U.S.C. § 1391(a), which states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Section 1391(c) controls the determination of the residency of corporate defendants for venue purposes and states:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

DaimlerChrysler argues that venue is improper because under § 1391(a) and (c) it is not a resident of the Eastern District of Texas.  Furthermore, DaimlerChrysler argues that no

3

substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas.  Therefore, this Court must first conduct a personal jurisdiction analysis to determine whether DaimlerChrysler is a resident of the Eastern District of Texas.  Whether DaimlerChrysler is subject to personal jurisdiction in the Eastern District of Texas depends on this Court's determination of whether jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the United States Constitution.

A.    Residency

The Texas long-arm statute[6] extends the reach of personal jurisdiction to the limits of the United States Constitution.  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).  Therefore, because Texas' long-arm statute is coextensive with the limits of due process, this Court need only consider whether sufficient contacts exist between DaimlerChrysler and the Eastern District of Texas to satisfy the "minimum contacts" requirements of *Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945).  "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional

---

[6]Tex. Civ. Prac. & Rem. Code Ann. § 17.042 states:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

notions of fair play and substantial justice." *Id.* To establish "minimum contacts," the defendant must have "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Contacts that are "random," "fortuitous," "attenuated," or "due to the unilateral activity of another party or a third person" are insufficient to confer jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Whether sufficient "minimum contacts" exist between DaimlerChrysler and the Eastern District of Texas may be described in terms of either specific jurisdiction or general jurisdiction. *Hunter v. Suzuki Motor Corp.*, No. 2:03-CV-128, 2003 WL 22149297, at *1 (E.D. Tex. Sept. 18, 2003). Specific jurisdiction involves situations in which the corporation has purposefully directed its activities at the forum State and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In contrast, general jurisdiction involves situations in which the nonresident defendant's contacts with the forum State, although not related to the plaintiff's cause of action, are so "continuous and systematic" that the forum may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the forum. *Helicopters Nacionales de Colombia, S.A.*, 466 U.S. at  415-16.

When this Court will decide the motion to dismiss without holding an evidentiary hearing, Harlow must make only a *prima facie* showing of the facts on which jurisdiction is to be predicated. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). To decide whether a *prima facie* case exists, the Court must accept as true Harlow's "uncontroverted

allegations, and resolve in [its] favor, all conflicts between the facts contained in the parties'
affidavits and other documentation." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841,
854 (5th Cir. 2000)(quoting *Alpine View*, 205 F.3d at 215).

Harlow asserts that jurisdiction exists under the "stream of commerce" theory because
DaimlerChrylser's contacts with the Eastern District of Texas are the result of the company
placing  automobiles into the stream of commerce with the expectation that they will be sold in
the Eastern District of Texas.  "[T]he forum State does not exceed its powers under the Due
Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into
the stream of commerce with the expectation that they will be purchased by consumers in the
forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).  "[I]f
the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but
arises from the efforts of the [defendant] to serve, directly or indirectly, the market for its product
. . . it is not unreasonable to subject it to suit." *Id.* at 297.

Since *World-Wide Volkswagen*, the lower courts have split over the exact requirements of
the stream of commerce theory.  This split is reflected in the Supreme Court's opinion in *Asahi
Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).  In *Asahi*, the plaintiff asserted the
jurisdiction of California state court was proper for the purpose of requiring a Japanese
corporation to indemnify a Taiwanese corporation on the basis of a sale made in Taiwan and a
shipment of goods from Japan to Taiwan.  All of the justices agreed that jurisdiction did not lie in
California and that the stream of commerce theory provided a valid basis for determining
minimum contacts.  The justices, however, could not agree as to the exact requirements of an
application of the theory.  Four justices, led by Justice O'Conner, expressed that an exercise of

personal jurisdiction required more than the mere act of placing a product in the stream of commerce, but there must be in addition "an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. The O'Conner plurality's view has become known as the "stream of commerce plus" theory. Four other justices, led by Justice Brennan, did not believe that the showing of additional conduct was necessary. The Brennan plurality held that:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.

*Id.* at 117.[7]

DaimlerChrysler asserts that it does not design, manufacture, or produce any vehicles in the Eastern District of Texas. DaimlerChrysler also argues that it does not sell any vehicles in the Eastern District of Texas, but instead only sells vehicles directly to another entity, DaimlerChrysler Motors Company, L.L.C. (hereinafter "DaimlerChrysler Motors"). According to DaimlerChrysler, these sales to DaimlerChrysler Motors occur outside the Eastern District of Texas, and DaimlerChrysler Motors than sells to independent dealers the automobiles it acquired from DaimlerChrysler. Therefore, DaimlerChrysler asserts it does not have sufficient contacts with the Eastern District of Texas for this Court to be able to exercise personal jurisdiction.

---

[7]The Fifth Circuit follows the pre-*Asahi* cases which apply the standard stream of commerce theory. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 n.11 (5th Cir. 1993) ("Absent rejection by a majority of the Supreme Court, we have continued to apply the stream of commerce analysis found in our pre-*Asahi* cases."). Therefore, this Court will apply the reasoning set forth in *World-Wide Volkswagen Corp.*

DaimlerChrysler's argument is unpersuasive.  On its website, DaimlerChrysler describes itself as "A Truly Global Company."[8]  As part of its "global" sales efforts, Chrysler Group[9] in 2004 sold 2,287,000 vehicle units in the United States.[10]  DaimlerChrysler's argument that it is not subject to personal jurisdiction in the Eastern District of Texas is completely undermined by its own advertising and public sales figures.  Under the *World-Wide Volkswagen Corp.* "stream of commerce" standard followed by the Fifth Circuit, a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  444 U.S. at 297-98.  Based upon DaimlerChrysler's sale of over two million vehicle units in the United States in 2004, this Court believes that there can be no argument that when DaimlerChrysler sold its vehicles to DaimlerChrysler Motors, DaimlerChrylser placed its vehicles in the "stream of commerce" with the expectation that they would be purchased by consumers in the Eastern District of Texas.  To hold otherwise would be

---

[8]*See* DaimlerChrysler, http://www.daimlerchrysler.com/dccom/0,,0-5-7155-1-12898-1-0-0-0-0-0-8-7155-0-0-0-0-0-0-0, 00.html (last visited December 9, 2005).

[9]The Chrysler Group consists of DaimlerChrysler Motors Company, L.L.C. and its subsidiaries DaimlerChrysler Corp., DaimlerChrysler Canada, Inc., and DaimlerChrysler de Mexico S.A. de C.V., as well as other international automotive affiliates.  These companies manufacture, assemble and sell cars and trucks under the brand names Chrysler, Jeep® and Dodge.  The Chrysler Group also provides its customers with parts and accessories marketed under the Mopar® brand name.  *See* DaimlerChrysler, http://www.daimlerchrysler.com/dccom/0,,0-5-470117-1-470123-1-0-0-0-0-0-8-479389-0-0-0-0- 0-0-0,00.html (last visited December 9, 2005).

[10]*See* DaimlerChrysler, http://www.daimlerchrysler.com/Projects/c2c/channel/documents/665796_facts_and_figures- 2005_e.pdf (last visited December 9, 2005).

unreasonable.

DaimlerChrysler also argues that it is not subject to personal jurisdiction under the
"stream of commerce" doctrine because the accident in the present case occurred in Arizona and
therefore, no harm occurred in the Eastern District of Texas.  According to DaimlerChrysler, the
"stream of commerce" analysis only applies if the sale or manufacture of the product has caused
harm in the forum state and cites *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.
1987) in support.[11]  DaimlerChrysler's argument is contrary to Supreme Court precedent.  In
*World-Wide Volkswagen Corp.*, the Supreme Court stated:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant
> who has not consented to suit there, this 'fair warning' requirement is satisfied if
> the defendant has 'purposefully directed' his activities at residents of the forum
> and **the litigation results from alleged injuries that 'arise out of or relate to'
> those activities.**  Thus '[t]he forum State does not exceed its powers under the
> Due Process Clause if it asserts personal jurisdiction over a corporation that
> delivers its products into the stream of commerce with the expectation that they
> will be purchased by consumers in the forum State' and those products
> subsequently injure forum consumers.

444 U.S. at 472-73 (citations omitted) (emphasis added).

DaimlerChrysler purposefully directed its activities at residents of the Eastern District of
Texas by placing its automobiles in the "stream of commerce."  The vehicle at issue was sold to
the plaintiff in the Eastern District of Texas.  Therefore, the present litigation results from
injuries that allegedly arise out of and relate to DaimlerChrysler placing its automobiles in the

---

[11]*Bearry v. Beach Aircraft Corp.* states:

When the contact stems from a product, sold or manufactured by the foreign
defendant, which has caused harm in the forum state, the court has jurisdiction if
it finds that the defendant delivered the product into the stream of commerce with
the expectation that it would be purchased by or used by consumers in the forum
state.

"stream of commerce" with the reasonable expectation that they would be purchased by consumers in the Eastern District of Texas.  Accordingly, DaimlerChrysler has sufficient minimum contacts with the Eastern District of Texas to support personal jurisdiction.

"[O]nce a plaintiff makes the required showing that there have been sufficient minimum contacts by the out-of-state defendant with the forum State, the defendant may still defeat jurisdiction by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice." *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).  The test of unreasonableness includes a balancing of (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies.  *Id.*

This Court holds that none of the factors involved in the balancing test favors DaimlerChrysler.  DaimlerChrysler advertises itself as a "global company" that sold over two million vehicles in the United States in 2004.  Therefore, defending a lawsuit in the Eastern District of Texas would create little, if any, burden on a corporation the size of DaimlerChrysler.  The State of Texas, the Eastern District of Texas, and all the states comprising the United States of America have an interest in ensuring companies only place safe automobiles in the "stream of commerce."  The Harlows also have a strong interest in obtaining relief due to the nature of Marilyn's injuries and subsequent care.  Therefore, DaimlerChrysler is subject to personal jurisdiction in the Eastern District of Texas and is a resident of the Eastern District of Texas for venue purposes.

10

B.        Substantial Part of the Events Giving Rise to the Claim

This Court also holds that a substantial part of the events giving rise to the claim occurred

in the Eastern District of Texas.  The Harlows bought their Plymouth Voyager car in Sherman,

Texas.  As previously mentioned, Sherman is in the Eastern District of Texas.  In Texas, a breach

of warranty under contract occurs when tender of delivery is made.  Tex. Bus. & Com. Code

Ann. § 2.725 (Vernon 1994).[12]  Therefore, the alleged breach of warranty by DaimlerChrylser

giving rise to one of Harlow's causes of action occurred in the Eastern District of Texas.

Furthermore, this Court holds that the sale of an allegedly defective product in the Eastern

District of Texas is also a substantial part of the events giving rise to the claim.  Accordingly,

venue is proper under 28 U.S.C. § 1391(a)(2) as well.

**III.     Conclusion**

Because DaimlerChrysler is a resident of the Eastern District of Texas for venue

purposes, this Court holds that venue is proper for the present case in the Eastern District of

Texas.  Venue in the Eastern District of Texas is also proper because a substantial part of the

events giving rise to the claim occurred in the District.  DaimlerChrysler in the alternative also

moves this Court for a transfer of venue to either the Northern District of Texas, the District of

---

[12] Tex. Bus. & Com. Code Ann. § 2.725 (Vernon 1994) states:

A cause of action accrues when the breach occurs, regardless of the aggrieved
party's lack of knowledge of the breach.  A breach of warranty occurs when
tender of delivery is made, except that where a warranty explicitly extends to
future performance of the goods and discovery of the breach must await the time
of such performance the cause of action accrues when the breach is or should have
been discovered.

11

Arizona, or the Eastern District of Michigan.  However, DaimlerChrysler provides no basis,

facts, or law supporting its motion to transfer venue.  Therefore, this Court DENIES

DaimlerChrysler's Motion to Dismiss or Transfer for Improper Venue.

     SIGNED this 22nd day of December, 2005.

_T. John Ward_

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE